Points Decided.

(No. 4673.   June 1, 1927.)

FRED GLENN, Doing Business Under the Name and Style of FRED GLENN & COMPANY, Respondent, v. FRED M. SALIH, LEE SALIH and HARRY SALIH, Co-partners Doing Business Under the Name and Style of SALIH BROS., and FRED SALIH, LEE SALIH and HARRY SALIH, Individually, Appellants.

[256 Pac. 947.]

BONDS — BREACH OF CONTRACT FOR SALE — EVIDENCE SUPPORTS FIND-INGS—DAMAGES—QUESTION OF ARRANGEMENT OF SALE IMMATERIAL.

1. Complaint in action for damages for breach of contract for sale of bonds, alleging written agreement for sale of certain school district bonds to be legal in every respect, at price agreed on, and failure to deliver such bonds in accordance with agreement within reasonable time, though plaintiff was willing and able to perform all conditions to be performed by him under the contract, *held* to state a cause of action as against general demurrer.

2. In action for damages for breach of contract for sale of bonds, evidence *held* to support finding that there was no repudiation or rejection of bonds by plaintiff.

3. In action for damages for breach of contract for sale of bonds, testimony of witnesses with long, extensive experience in bond markets *held* sufficient to support finding that market was available for bonds at time they were supposed to be delivered in accordance with contract.

4. In the absence of contrary evidence, worth of security will be presumed to be its face value.

5. In action to recover damages for defendant's failure to deliver bonds in accordance with contract for purchase thereof, question whether plaintiff had actually arranged for sale of bonds was immaterial, where it was shown that there was an available market at such time.

APPEAL from the District Court of the Ninth Judicial District, for Bonneville County.   Hon. B. S. Varian, Judge.

Publisher's Note.
  See Evidence, 22 C. J., sec. 26, p. 84, n. 68 New.
  Sales, 35 Cyc., p. 623, n. 15, p. 631, n. 8, 14, p. 632, n. 19.

Action for damages.  Judgment for plaintiff.  *Affirmed.*

W. P. Hanson and E. M. Holden, for Appellants.

It is well settled that an acceptance of an offer, to be effectual, must be unconditional, and must not modify or introduce any new terms into the offer.  (*Phelps v. Good,* 15 Ida. 76, 96 Pac. 216; 1 Page on Contracts, sec. 45; 9 Cyc. 267.)

The acceptance of an offer which completes a contract must be positive, unconditional, unequivocal and unambiguous, and must not change, add to or qualify the terms of the offer.  (*Shaw Wholesale Lumber Co. v. Hackbarth,* 102 Or. 80, 198 Pac. 908, 201 Pac. 1066.)

A breach of a contract must be clearly alleged, the rule being: "Both in setting out an agreement and alleging the breach, enough must be placed in the record to show that the contract has been broken, and that the plaintiff has a cause of action."  (13 C. J., sec. 866, p. 733.)

All parts of a contract relied upon which are material for the purpose of enabling the court to form a just idea of what the contract actually was, or which are necessary for furnishing a basis of damages, must be stated with certainty and precision.  (13 C. J., sec. 830, p. 716.)

To constitute a binding contract by letter, there must be a proposal squarely assented to; if the acceptance be not unqualified, or go not to the actual thing proposed, there is no binding contract.  (*Four Oil Co. v. United Oil Producers,* 145 Cal. 623, 79 Pac. 366, 68 L. R. A. 226; *National Bank v. Hall,* 101 U. S. 51, 25 L. ed. 822.)

F. E. Tydeman, for Respondent.

"In pleading the performance of conditions precedent in a contract, it is not necessary to state the facts showing such performance, but it may be stated generally that the party duly performed all the conditions on his part, and if such allegation be controverted, the party pleading must

establish on the trial the facts showing such performance."
(C. S., sec. 6712.)

"A declaration made by one party to a contract prior to
the time for performance that he would not comply there-
with, excuses offer to perform by other party before bringing
action for breach." (*Forrester v. Hauser Const. Co.,* 116
Or. 222, 240 Pac. 873.)

The payment of the purchase price never became a condi-
tion precedent. (C. S., sec. 5714.)

T. BAILEY LEE, J.—Respondent, with offices at Port-
land, Oregon, was in the business of buying and selling
securities. On October 18, 1921, appellants, Salih Bros.,
wrote him, stating that they had for sale "$17,000 of the
bonds of School District #13, Bear Lake County, Idaho,"
inquiring if he could negotiate "them," and requesting a
reply by return mail. Respondent replied on October 20th
that he would be interested in buying the bonds, should
their legality and the financial statement prove satisfactory.
He further stated that upon receipt of more detailed infor-
mation, he would be glad to submit a definite figure "at
which we will buy these bonds." Appellants replied, speci-
fying the date of issue, date of maturity, the rate of interest
of the bonds, and the name, population and assessed valua-
tion of the property of the district, together with the
amount of outstanding indebtedness. On October 31st re-
spondent wrote appellants:

"The information sent us seems to be satisfactory, and,
if you will offer the issue to us firmly at a price of 90 and
accrued interest, we will be pleased to buy them at said
price, subject, of course, to the bonds being legal in every
respect."

On Novemer 8th appellants wrote back:

" . . . . we will sell you these bonds at 90, crediting us
with the accrued interest, which will be a very small item."

On November 12th respondent wired:

"We confirm purchase from you of seventeen thousand
six per cent school bonds of school district numbered thir-

teen of Bear Lake County, Idaho, at price ninety and accrued interest as per your letter of November eighth.    Please send the transcript of proceedings at earliest convenient date."

This telegram was confirmed by letter of the same date. On November 14th appellants by letter advised respondent that the "bonds" had already been printed, and requested him to designate some Portland bank whither the "bonds" might be "sent in escrow to be delivered on payment of the price named, to-wit: 90 per cent of the amount of the bonds and accrued interest on the amount of bonds to the date of transfer."

This letter was acknowledged on November 16th by respondent who requested appellants to "Kindly send the bonds to the Northwestern National Bank of this city, with instructions to deliver them to us upon payment of ninety per cent of the amount of the face of the bonds, plus all accrued interest up to the date when the money is paid over. The instructions should be given in the form of a letter from your bank to the Portland bank."

The indicated instructions were never given, but on November 23d the First National Bank of Montpelier, Idaho, ostensibly acting for the school district, sent the Northwestern National Bank of Portland one bond for $17,000 with certain papers and transcript of the proceedings attached; and on November 29th advised the bank that such documents had been forwarded for the inspection of prospective purchasers who would make their bids to the school district, and that upon acceptance by the district the forwarding bank would advise its correspondent what amount to collect and remit.    Having discovered that *one* bond had been made payable to the state of Idaho, respondent wired appellants on November 28th, calling it to their attention and suggesting that new bonds be issued in smaller denominations payable to bearer.    This wire was followed by a letter the next day, advising appellants: "It was up to the School District to have delivered you bonds payable to bearer, and in marketable shape," and offering, with appellants' permission, to have such bonds prepared properly together

with such other papers as would have to be executed by the district. Appellants replied that they had no objection to a change in the form of the bonds as to denomination or name of payee, so long as the Idaho law was complied with; and they promised to take up the matter with the school board. On December 8th respondent was notified by the Portland bank that the Montpelier bank had requested the return of the "bonds" and all documents. That day he wired appellants that he had sold the bonds and requested immediate reason for their requiring a return of transcript and bonds. A return wire announced:

"Bern Board will not change denomination bonds. Hoping sell State of Idaho. Return transcript bond and all papers."

Respondent wired back on December 12th, demanding that, if the district refused to issue bonds in smaller denominations, appellants arrange to have the *one* bond issued in the proper way, and offering to bear any reasonable expense incident to having legal bonds prepared. On December 23d appellants wrote that the school board was opposed to the deal going through; that they were powerless to change the board's attitude and that "it seems that the negotiations must be called off."

Respondent sued for breach of contract, claiming damages in a sum equal to the difference between the par value of the bonds contracted and the price agreed to be paid therefor. A general demurrer to the second amended complaint was overruled; and upon issue joined the case went to trial before a jury. At the close of plaintiff's evidence a motion for nonsuit was made and denied. Final proof having been submitted by the respective parties, defendants' motion for a directed verdict was denied. Plaintiff then moved for a directed verdict; and the cause was taken from the jury and considered by the Court who later made his findings of fact and conclusions of law, and entered judgment in plaintiff's favor for $1,700. This appeal is from the judgment.

Appellants specify certain errors of law and insufficiencies of the evidence. First, is the contention that the second

amended complaint failed to state a cause of action. This complaint plead that on or about a day certain plaintiff and defendents entered into a written agreement whereby defendants agreed to sell plaintiff, and plaintiff agreed to purchase from defendants "certain bonds issued by School District Number Thirteen of Bear Lake County, State of Idaho; that the defendant agreed that the said bonds were legal in every respect"; that their face value was $17,000; that the price agreed upon was 90 per cent of their face value, to wit, $15,300 plus interest accrued to the date of delivery; that plaintiff agreed to purchase the bonds subject to their being legal in every respect; that such bonds were legal; that they were to be deposited in the Northwestern National Bank of Portland, Oregon, to be delivered plaintiff upon his paying to said bank the agreed purchase price; that the bonds were to be delivered within a reasonable time; that a reasonable time had elapsed and that defendants had failed and refused to deliver them; that plaintiff had performed all conditions by him to be performed under the contract, and had at all times been willing and able to perform them, and that by reason of defendants' failure to deliver the bonds he had suffered damages in the sum of $1,700.

[1] Tested by the rule that a general demurrer admits the facts plead, we think the complaint sets out a clearly stated cause of action. Defendants denied the contract as plead by plaintiff, and alleged that they only contracted to sell him *one* certain bond in the sum of $17,000; that they deposited the same for his inspection in the Portland bank, and that he rejected it for the reason that it was made payable to the state of Idaho, and could not be negotiated in that form, and that the issue had not been made in smaller denominations.

[2] A careful study of the correspondence between the parties gives no support for this contention. The only subject matter discussed is "bonds"; there is never mention of *one* bond or any bond, especially a bond payable to the state of Idaho. Appellants advised respondent that they had

"bonds" for sale; they inquired if he could negotiate "them," and what data he will wish concerning "them"; they advised him that the "bonds" were issued on October 1st; they acknowledged his offer to purchase "Bear Lake County School bonds in the sum of $17,000," and say they will sell him "these bonds" for a price which they feel carries an ample discount for "the securities" as sound as "the ones" offered; they ask if he will accept the "bonds" at the price mentioned; and in their letter of November 14th they write: "Re Bear Lake County School District #13 bonds," employing the word "bonds," five times. In their letter of November 22d, advising respondent that "the bonds" have been forwarded to be held in escrow, the word "bonds" is used four times; their letter of December 1st refers to a change in the form of "school bonds"; their wire of December 10th notifies respondent that the board will not change "denomination bonds"; and then, for the first time, employs the singular term in requesting the return of "transcript bond and all papers." There can be no question that appellants agreed to sell and respondent agreed to buy $17,000 worth of the bonds of Bear Lake County School District No. 13, issued October 1, 1921, bearing six per cent interest and maturing in twenty years. Appellants are estopped to claim anything else. They contracted to sell *bonds,* and negotiable bonds withal. They deposited *one* bond payable to the state of Idaho, unaccompanied by any assignment on the state's part. In such shape, it was worthless to respondent. Yet, after ascertaining that he could not get promised "bonds," he was willing to take one bond, providing such bond was negotiable. His attitude cannot be said to have been that of one either repudiating or rejecting; and we are satisfied that the court's findings are correct in this regard.

[3–5] The only remaining essential question is that of damages. The court found that during the months of November and December, 1921, there was an available market for said bonds in Portland, Oregon, at a price of $17,000 plus accrued interest. This finding is evidently based upon

. the testimony of respondent and the witness, Edmonds, to that effect. Considering that these witnesses were shown to have had long and extensive experience in bond markets, together with the rule that, in the absence of contrary evidence, the worth of a security will be presumed to be its face value, the finding is sufficiently supported. Whether or not respondent had actually arranged for a sale of the bonds is immaterial, since there was a waiting market for them.

Judgment affirmed. Costs to respondent.

Wm. E. Lee, C. J., and Budge and Givens, JJ., concur.

Taylor, J., dissents.